**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| OSAMA M. EL-ATARI | ) | Case No. 09-14950-BFK |
| | ) | Chapter 7 |
| | ) | |
| Debtor | ) | |
| | ) | |
| KEVIN R. MCCARTHY, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 11-01404 |
| | ) | |
| 88 LA GORCE, LLC | ) | |
| | ) | |
| Defendant | | |

**REPORT AND RECOMMENDATION**

The matter comes before the Court on the Motion of the Defendant, 88 La Gorce, LLC, to dismiss the Plaintiff's Complaint pursuant to Bankruptcy Rule 7012 (incorporating Fed.R.Civ.P. 12(b)(6)). Docket No. 13. In response, the Plaintiff, Kevin McCarthy, Trustee, filed a Motion to Amend his Complaint, and a proposed First Amended Complaint. Docket No. 20. In the Plaintiff's view, the proposed Amended Complaint solves the problems raised by the Motion to Dismiss. In the Court's view, it does not. The Court will: (a) grant the Motion to Amend; and (b) recommend the dismissal of the Amended Complaint, for the reasons stated below.

**Facts Alleged by the Amended Complaint**

This is one of approximately fifty-four adversary proceedings filed by the Trustee in connection with this bankruptcy case. Mr. el-Atari engaged in fraud on a massive scale; this

1

much is undisputed. He forged life insurance certificates, and borrowed against them with various lending institutions. Ultimately, he was found out, apprehended and charged with a number of federal offenses. He plead guilty to two counts of bank fraud, and was sentenced to twelve years in prison. His restitution obligations exceed $54,000,000.00.

The Proposed Amended Complaint in this case alleges that Mr. El-Atari leased office space in Miami Beach from the Defendant. The lease was for a period of two years, beginning on March 9, 2009. Proposed Amended Complaint, ¶ 15. The lease required Mr. El-Atari to pay $2.0 million (representing $83,333 per month, times 24 months) upon signing, but the great majority of this was never paid. *Id.* A $100,000 payment was wired on February 19, 2009. *Id*. at ¶ 17. In addition, a $500,000 payment was wired on March 9, 2009. *Id*. at ¶ 20.

The Proposed Amended Complaint further alleges that the Debtor defaulted in the payment of the balance of the advance rent of $1.5 million, and ultimately, the landlord recovered possession of the space. Proposed Amended Complaint, ¶¶ 21-23. The landlord then rented the space to another, unrelated tenant, beginning June 21, 2009 (the "Replacement Lease"). *Id*. at ¶ 24. Under the Replacement Lease, the landlord rented the space to the new tenant for $90,000 per month, roughly $6,700 per month more than the landlord would have received from Mr. El-Atari (if the rent were in fact paid, and if pro-rated over the 24 month life of the el-Atari lease). *Id.*

In his Proposed Amended Complaint, the Trustee seeks recovery of: (a) the difference between the $600,000 paid and the roughly $280,000 in rent for Mr. El-Atari's three and one-half months' possession of the premises, or approximately $320,000; and (b) the difference between the rent that Mr. El-Atari agreed to pay ($83,333 per month) and the rent called for

under the Replacement Lease ($90,000 per month), for the remaining term of the El-Atari lease (the so-called Surplus claim).

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1334(b) and the Order of Reference of the U.S. District Court for this District dated August 15, 1984.  This case involves both core and non-core claims, as follows:

Count I (11 U.S.C. § 548(a)(1)(B)) – core proceeding, for which the Court must enter a Report and Recommendation;

Count II (Breach of Contract) – State law, non-core proceeding;

Count III (Unjust Enrichment) – State law; non-core proceeding;

Count IV (11 U.S.C. § 550(a)) – core proceeding, for which the Court must enter a Report and Recommendation; and

Count V (11 U.S.C. § 502(d)) – core proceeding, for which the Court can enter a final Order.

Accordingly, the Court will enter a Report and Recommendation, and not a final order, pursuant to  the District Court's opinion in *McCarthy v. Wells Fargo (In re El-Atari)*, No. 1:11cv1090, 2011 WL 5828013 (E.D. Va. Nov. 18, 2011).

## Discussion

For the reasons stated below, the Court will recommend that the District Court: (a) dismiss Count I, with prejudice; (b) abstain from hearing Count II; (c) abstain from hearing Count III; (d) dismiss Count IV with prejudice; and (e) dismiss Count V, without prejudice.[1]

---

[1]  All references are to the Plaintiff's Amended Complaint.

*1. Count I – 11 U.S.C. § 548(a)(1)(B) Claim.*

Count I seeks a recovery of funds pursuant to Bankruptcy Code Section 548(a)(1)(B), the constructively fraudulent transfer avoidance section of the Code. For the reasons discussed below, the Court recommends the dismissal of Count I.

*(a) The $100,000 and the $500,000 Payments to 88 La Gorce.*

Count I first seeks a recovery of the $100,000 and $500,000 payments made under the lease terms, to the extent that they exceed what would have been the pro-rated rent for the period of the Debtor's occupancy of the premises. In defining the term "value," Section 548(d)(2)(A) provides:

> "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

11 U.S.C. § 548(d)(2)(A).

This is reflective of the fact that constructively fraudulent transfer law is essentially concerned with preserving a debtor's net worth. For example, even a transfer made to satisfy a third party's debt can be considered not to be constructively fraudulent, where the Debtor receives the benefit of the transfer. *See In re Jeffrey Bigelow Design Group,* 956 F.2d 479, 484 (4th Cir. 1992) ("[T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred"); *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 992 (2d Cir. 1981); *Pummil v. Greensfelder, Hemker & Gale, P.C.* (*In re Richards & Conover Steel, Co.*), 267 B.R. 602, 614 n.4 (8th Cir. B.A.P. 2001) ("[I]f the exchange

4

preserves or enhances the debtor's net worth, then the transfer was not fraudulent even if a third party was the intended beneficiary of the transfer").

In this case, the Debtor signed a lease that obligated him to pay, up front, for the space for the entire term. The Trustee seeks to recover the apparent overpayment of rent under a constructively fraudulent transfer theory. Regardless of whether the alleged overpayment is recoverable as a matter of State law, the overpayment is not a constructively fraudulent transfer because the Debtor made the payment in satisfaction of his existing contractual obligation to pay. A payment made in satisfaction of an existing contractual obligation is, by definition, "value" under Section 548(d).

Still, the Trustee would argue that, if there was value, the value was not "reasonably equivalent" to what the Debtor received. In essence, the Trustee is saying that, in retrospect, it was a very bad deal for the Debtor to pay so much for the space, for so limited a period of time. In fact, the Trustee would argue, if we divide the $2.0 million in rent by the twenty-four months (by which we obtain $83,333), the Debtor overpaid by some $320,000, and what the Debtor received (three and one half months' occupancy) was not reasonably equivalent to what he paid. There is some appeal to this position. However, the Trustee is reviewing the transaction in hindsight, which is not the proper way to view an allegedly fraudulent transfer. *See In re Morris Communications NC, Inc*., 914 F.2d 458, 466 (4th Cir. 1990) ("The date for defining such reasonable equivalence is the date of the transfer . . . . 'The critical time is when the transfer is made. Neither subsequent depreciation in nor appreciation in value of the consideration affects the value question whether reasonable equivalent value was given'" (quoting *Collier on Bankruptcy*, Section 548.09 at p. 116 (15th Ed. 1984))).

Further, under Section 548(a)(1)(B), the Debtor need not receive dollar-for-dollar value for what was given. *Advanced Telecommunication Network, Inc.,* 490 F.3d 1325, 1336 (11th Cir. 2007) (citing *Butler Aviation Int'l v. Whyte (In re Matter of Fairchild Aircraft Corp.*), 6 F.3d 1119, 1125 (5th Cir. 1993)). There is no set percentage, or mathematical formula, for what "reasonably equivalent" means under the Code. *In re Morris Communications NC, Inc.,* 914 F.2d at 466 ("[R]easonable equivalence is not wholly synonymous with market value, even though market value is an extremely important factor to be used in the Court's assessment of reasonable equivalence"). The term "reasonably equivalent" means "approximately equivalent," or "roughly equivalent." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540 n.4 (1994); *In re Direct Response Media*, 2012 WL 112503, at *19 (Bankr. D. Del. Jan. 12, 2012) ("[A]lthough reasonably equivalent value is not defined in the Code, 'a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave'" (citing *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.),* 405 B.R. 527, 527 (Bankr. D. Del. 2009))). The Court notes that the estimated $280,000 in rent for the three and one-half months that the Debtor had use of the space (using the $83,333 per month figure) is approximately 47% of the $600,000 paid. Further, under Section 548(a)(1)(B), the Debtor's *opportunity* to occupy the space can constitute value, as long as the expectation is reasonable and capable of being realized. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.),* 92 F.3d 139, 148 (3d Cir. 1996) ("[T]he mere 'opportunity' to receive an economic benefit in the future constitutes 'value'"); *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 647 (3d Cir. 1991) (Reasonably equivalent value exists where there is a "legitimate and reasonable expectation" of value). Here, Mr. El-Atari had the opportunity to occupy the space for the entire two years. He had the

opportunity to conduct legitimate business in the space – the fact that his business turned out to be wholly illegitimate is of no moment. Rather, the fact that he had the opportunity to occupy commercial office space in Miami Beach, and to conduct business therein, was unquestionably of prospective value. In *Metro Communications,* the Third Circuit held that "[t]he ability to borrow money has considerable value in the commercial world." 945 F.2d at 647. So, too, the ability to lease commercial space has considerable value. The rough equivalence of what was given up versus what was obtained in the transaction (here, as noted, a 47% ratio), *together with* the opportunity to continue to lease the property, constituted reasonably equivalent value under Section 548(a)(1)(B).

There is no suggestion here that the Debtor was paying for anything speculative or remote here – he had the opportunity to occupy the space for the entire term, as soon as he signed the Lease. In that sense, this case is distinguishable from the result in the *R.M.L., Inc.* case. There, the bankruptcy judge made a finding that the chances of success, i.e., closing on the financing for which substantial fees were paid, was "extremely remote," and hence the value was not "reasonably equivalent" under Section 548(a)(1)(B). *R.M.L., Inc.*, 92 F.3d at 148. Here, the Debtor had the very real probability of actually occupying the space for the entire lease period, had he only paid the rent. In short, there was value, and that value was reasonably equivalent to a benefit received by the Debtor, the actual occupancy of the space for three and a half months, together with the opportunity to occupy the leased space for the balance of the term.

For the foregoing reasons, the Court recommends the dismissal of Count I.

*(b) The "Surplus" Claim.*

The so-called Surplus claim is a claim for the difference between what Mr. El-Atari would have paid under his lease with 88 La Gorce, and the rent that 88 La Gorce may receive

under the Replacement Lease. Proposed Amended Complaint, ¶¶ 32, 39. However, regardless of whether the Surplus may be recoverable as a matter of State law, the Surplus does not constitute a "transfer… of an interest of the debtor in property." 11 U.S.C. § 548(a)(1)(B). The only transfers of the Debtor's property were the $100,000 transfer and the $500,000 transfer, discussed above. Accordingly, the Court will recommend the dismissal of Count I, as it relates to the Trustee's Surplus claim.

    *2. Count II – Breach of Contract.*

Section 1334(c)(1) of Title 28 of the U.S. Code provides as follows:

> Except with respect to a case under Chapter 15 of Title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with the State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(b)(1).

Count II is a non-core, related proceeding. The Bankruptcy Court would have to enter a Report and Recommendation as to this claim. *Stern v. Marshall* __ U.S. __, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *see also McCarthy v. Wells Fargo Bank, N.A.*, No. 1:11cv1090, 2011 WL 5828013, at *2 (E.D. Va. Nov. 18, 2011) (A bankruptcy judge may hear, but not finally determine matters that augment the estate). As a result of the recommended dismissal of Counts I, IV and V herein, if the recommendation is accepted, there will be no core claims left in this adversary proceeding, and only State law claims will remain. *See New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.),* 292 F.3d 61, 69 (1st Cir. 2002) (In applying Section 1334(c)(1), courts should consider "'the extent to which state law issues predominate over bankruptcy issues;' 'the presence of a related proceeding commenced in state court or other nonbankruptcy court;' and 'the likelihood that the

commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties'" (citing *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990))); *Massey Energy Co. v. W. Va. Consumers for Justice*, 351 B.R. 348, 35-51 (E.D. Va. 2006) (abstaining under Section 1334(c)(1) where State law issues predominate and issues can be timely adjudicated in State court).

A number of courts have employed a twelve factor test for permissive abstention, noting that the deciding court should consider one or more (but not necessarily all) of the factors. They are:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Hart v. Bellow*, No. 11 Civ. 67 (RMB), 2011 WL 1584577, at *4 (S.D. N.Y. April 27, 2011) (quoting *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, No. 05 Civ. 9137 (DLC), 2006 WL 839079, at *5 (S.D.N.Y. March 31, 2006)); *Turturici v. National Mortg. Servicing, LP*, No. CIV S-10-2853 KJM, 2011 WL 4480169, at *3 (E.D. Cal. Sept. 26, 2011).

While there is no pending State court lawsuit at this time, there is no reason to conclude that the Trustee's State law claims cannot be timely adjudicated in the State courts of Florida, or

in the U.S. District Courts if diversity jurisdiction is present.[2]  This is a Chapter 7 liquidation case, in which the Debtor is in federal prison.  There is, therefore, no impact on the administration of the bankruptcy case in requiring the Trustee to bring his State law claims in State court (or the U.S. District Court, if there is diversity).  There may be a right to a jury trial that would have to be tried in the District Court, and, as noted above, even if the Defendant does not demand a jury, the Bankruptcy Court must submit a Report and Recommendation to the District Court, absent consent to the entry of final Orders by the Bankruptcy Judge.  Most importantly, if the Court accepts the recommendation as to the core claims (Counts I, IV and V), there will only be State law, non-core claims left in the case.  Accordingly, the Court recommends that the District Court abstain from hearing Count II pursuant to 28 U.S.C. § 1334(c)(1).[3]

      3.  *Count III – Unjust Enrichment.*

The Court recommends discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) with respect to Count III for the same reason as it recommends abstention on Count II.  Count III is similarly a purely State law cause of action, and if the recommendation is accepted on Counts I, IV and V, there no longer will be any core claims at issue in the case.  Therefore, the Court recommends discretionary abstention with respect to Count III, pursuant to 28 U.S.C. § 1334(c)(1).

---

[2] This Court makes no finding on whether the Trustee could re-file the State law claims in a U.S. District Court based on diversity of citizenship jurisdiction, 28 U.S.C. § 1332, or, if so, whether venue would be appropriate in this District.

[3] Mandatory abstention is not required under 28 U.S.C. § 1334(c)(2), because there was no action commenced in State court as of the filing of the El-Atari bankruptcy petition (and, as noted, it isn't clear whether or not, under the language of Section 1334(c)(2), "an action could not have been commenced in a court of the United States absent jurisdiction under [Section 1334]," because it is unknown whether or not there is complete diversity between the parties).

   *4. Count IV – 11 U.S.C. §550(a) Claim.*

Count IV follows the Count I claim.  There can only be a recovery under Section 550(a) if the avoidance claim under Count I is successful.  11 U.S.C. §550(a) ("to the extent that a transfer is avoided under section . . . 548").  Because Count I should be dismissed, Count IV should be dismissed as well.

   *5. Count V – 11 U.S.C. §502(d) Objection to Claim.*

This is a core proceeding for which the Bankruptcy Court can enter a final Order, as it does not seek a monetary recovery that will augment the estate.  *In re Borin*, No. DT 11-03122, 2011 WL 5248310, at *1 (Bankr. W.D. Mich. Nov. 2, 2011) ("An objection to claim is clearly a 'core' proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), and the Supreme Court's recent decision in *Stern v. Marshall,* ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), does not undermine this court's authority to enter a final order").  Because the Section 548 and 550 claims should be dismissed, there is presently no basis for an objection to 88 La Gorce's claim under Section 502(d).  Section 502(d) is limited, by its terms, to a setoff of Bankruptcy Code turnover and avoidance claims, and does not apply to the setoff of non-core, State law claims brought by the Debtor.[4]

However, to the extent that the Plaintiff may be successful on his State law claims against the Defendant, he will potentially have a setoff or a defense to the 88 La Gorce proof of claim, under applicable State law.  11 U.S.C. § 502(b)(1) (A claim shall be allowed, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any

---

[4]  Section 502(d) provides: "Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d).

11

agreement or applicable law . . ."). The Court, therefore, will recommend that Count V be dismissed without prejudice.

## Conclusion

For the foregoing reasons, the Court recommends that the District Court: (a) dismiss Count I, with prejudice; (b) abstain from hearing Count II; (c) abstain from hearing Count III; (d) dismiss Count IV with prejudice; and (e) dismiss Count V without prejudice. An appropriate Order will issue.

Date: _____
Brian F. Kenney
United States Bankruptcy Judge

Copies to:

Stephen E. Leach, Esquire
Leach Travell Britt, PC
8270 Greensboro Drive
Suite 1050
McLean, VA 22102
Counsel for the Plaintiff

Bradford F. Englander, Esquire
Whiteford Taylor & Preston, L.L.P.
Suite 300
3190 Fairview Park Drive
Falls Church, VA 22042
Counsel for the Defendant